## Richmond

THOMAS PARKER v. CHARLES H. LEAVITT, CITY SERGEANT OF THE CITY OF NORFOLK, ADMINISTRATOR OF THE ESTATE OF WILLIE DAVIS, DECEASED.

June 13, 1960.

Record No. 5089.

Present, All the Justices.

The opinion states the case.

*Calvin W. Breit* (*Robert S. Cohen; Amato, Babalas, Breit & Cohen,* on brief), for the plaintiff in error.

*William L. Shapero* (*Maurice B. Shapero; Shapero & Shapero,* on brief), for the defendant in error.

SPRATLEY, J., delivered the opinion of the court.

■ This is an action instituted by Thomas Parker, plaintiff, against Charles H. Leavitt, City Sergeant of the City of Norfolk, Virginia, administrator of the estate of Willie Davis, deceased, to recover of the estate of the decedent damages for injuries received by the plaintiff in an automobile accident, which occurred while Davis was driving Parker's automobile, with Parker seated beside him. A jury returned a verdict in favor of the defendant on which verdict judgment was entered, and the plaintiff is here on a writ of error.

The principal and controlling question is whether Parker was, under the facts herein stated, a guest without payment for transportation within the meaning of § 8-646.1, Code of Virginia, 1950.

Code § 8-646.1 provides that:

"No person transported by the owner or operator of any motor vehicle as a guest without payment for such transportation and no personal representative of any such guest so transported shall be entitled to recover damages against such owner or operator for death or injuries to the person or property of such guest resulting from the operation of such motor vehicle, unless such death or injury was caused or resulted from the gross negligence or wilful and wanton disregard of the safety of the person or property of the person being so transported on the part of such owner or operator."

The following evidence was presented by witnesses introduced on behalf of the plaintiff:

The accident occurred on October 13, 1957, about 2:00 p. m., on Route 650, in Princess Anne County, Virginia. On that day, Willie Davis went to the home of Parker in South Norfolk, Virginia. Davis asked Parker to drive him in Parker's car to the home of Davis' employer, so that Davis could borrow some money from his employer to pay for the admission of Davis' aunt to a hospital. Parker said that he had recently suffered an injury to his groin and had been ordered by his doctor not to drive, and that he would, therefore, be unable to comply with Davis' request. Davis left, but returned about one-half hour later, and stated that he could find no one to transport him to his employer's home. He said to Parker: "Probably one day you might have to have somebody to help you and if I could, I would do it." Parker replied: "I can't drive. How will I get you down there?" Davis said: "I can drive the car."

Parker said that while he had never ridden with Davis, he knew that the latter was used to driving a car, and "I permitted him to drive if I went with him. I wouldn't permit him to have the car by himself."

Leroy Williams, the brother-in-law of Parker, asked if he could go with Parker and Davis, and Parker agreed that he might do so. Davis proceeded to drive the car, with Parker seated to the right of him in the front seat, and Williams in the rear seat.

Parker said that Davis drove in a careful and proper manner until he came to a point near Robbins' Corner, in Princess Anne County, about 15 or 16 miles from the point where they started. Davis then increased the speed of the automobile from an estimated 40 miles per hour to an estimated 60 or 65 miles, and as a result the vehicle began "to sway and zig-zag" from the road to its right shoulder. Parker warned Davis to slow down and bring the automobile under control. Davis, however, drove faster and traveled 490 feet off the road on the right shoulder, then back on the road, then across the road to the left shoulder, and then 144 feet into an oak tree on the left side of the road. The automobile was completely demolished, and Parker received serious and permanent injuries to his neck, back and shoulder. Davis died 17 days later on October 30, 1957.

Dr. C. O. Barclay, medical examiner for the city of Norfolk, said that the cause of Davis' death was "a paralysis resulting from a subluxation of the fifth and sixth cerebral vertebrae in the neck." The doctor performed no autopsy and made no other findings.

No witnesses were introduced on behalf of the defendant. Davis was dead, and we are told that there were no witnesses to the accident except the plaintiff and his brother-in-law, Williams.

At the conclusion of the evidence, the defendant moved to strike it on the ground that the plaintiff was a guest passenger, and no gross negligence had been shown on the part of the defendant. The motion was overruled, and the case submitted to the jury under instructions based on the theory that Parker was a guest without payment for his transportation.

In *Boggs* v. *Plybon*, 157 Va. 30, 160 S. E. 77, decided in 1931, we said that one who undertakes a duty gratuitously should be subjected to a lesser measure of obligation than one who enters upon such an obligation for pay. Accordingly, we held that a gratuitous guest in a motor vehicle must prove gross negligence in order to recover damages for injuries caused by the owner or operator of the car.

Code, § 8-646.1, enacted in 1938, Acts 1938, page 417, is a legislative codification of the gross negligence rule established in *Boggs* v. *Plybon, supra*. In interpreting the statute, we have heretofore, in a long line of cases, dealt only with the status of a passenger in a motor vehicle, which was being operated by the owner of the vehicle.

Here we are confronted with the question of the status of Parker, the owner-occupant of the car, which was being operated by his friend, Davis. In considering that question, it is well to bear in mind that it is expressly provided that either "the owner or operator of any motor vehicle" may plead the statute as a defense.

Who is a guest within the meaning of § 8-646.1?

In Restatement, Torts, § 490, comment a, we find this definition:

"* * * The word 'guest' is used to denote one whom the owner or possessor of a motor car or other vehicle invites or permits to ride with him as a gratuity, that is, without any financial return, except such slight benefits as it is customary to extend as a part of the ordinary courtesies of the road."

In Webster's New International Dictionary, Second Edition, a "guest" is defined as follows:

"A person entertained in one's house or at one's table; a visitor entertained without pay; hence, a person to whom the hospitality of a home, club, etc., is extended."

In 60 C. J. S., Motor Vehicles, § 399 (5) a, page 1009, it is said that, in general:

"A guest, within the meaning of automobile guest statutes, is one who takes a ride in a motor vehicle driven by another, merely for his own pleasure or on his own business, and without making any return or conferring any benefit on the operator thereof; and the determination of whether a particular person is a guest depends on all the circumstances."

In 5A Am. Jur., Automobiles and Highway Traffic, § 514, page 553, a "guest" is defined as follows:

"A guest is one who is invited, either directly or by implication, to enjoy the hospitality of the driver, and who accepts such hospitality and takes a ride either for his own pleasure or on his own business, without making any return to or conferring any benefit upon the driver other than the mere pleasure of his company. A person riding in a motor vehicle is a guest if his carriage confers a benefit only upon himself and no benefit upon the owner or operator except such as is

incidental to hospitality, social relations, companionship, or the like as a mere gratuity. However, if his carriage contributes such tangible and substantial benefits as to promote the mutual interests of both the passenger and the owner or operator, or is primarily for the attainment of some tangible and substantial objective or business purpose of the owner or operator, he is not a guest."

For further definitions, see 2 Michie Jur., Automobiles, § 43, pages 500 *et seq.;* Annotation 82 A. L. R., pages 1365 *et seq.;* 95 A. L. R., pages 1181 *et seq.;* 27 Virginia Law Review, pages 559 *et seq.;* and XIII W. & L. Law Review, page 84.

There is little disagreement among the decisions as to the general principles governing the determination of so called guest statutes. Some of the decisions have had our statute under consideration.

In *Lorch* v. *Eglin*, 369 Pa. 314, 85 A. 2d 841, Lorch, the owner of a motor car, was a passenger in his car, operated at his request by his friend, Eglin. In Virginia, south of Washington, D. C., their vehicle collided with another automobile, and Lorch, the owner of the car, was seriously injured. The trip was made by Lorch for pleasure, and for Eglin it was a business trip. Lorch agreed to pay for gas, oil and parking. In construing the Virginia guest statute, (§ 8-646.1) the Supreme Court of Pennsylvania held that Lorch was not a guest in his own car, and the Virginia statute could not be used in defense of the driver of the car. The court adopted the definition of "guest" given in Restatement, Torts, § 490, comment a, and cited in support *Gledhill* v. *Connecticut Company*, 121 Conn. 102, 183 A. 379; and *Anderson* v. *Burkardt*, 275 N. Y. 281, 9 N. E. 2d 929.

In *Gledhill* v. *Connecticut Company, supra,* it appears that Graham and his brother-in-law, Gledhill, started on a fishing trip in a car owned by Gledhill, with Graham driving at the request of the owner. Gledhill was seated in the front seat beside Graham. As they drove along the highway, Graham lost control of the vehicle and drove at high speed against a pole on the side of the road, causing injuries to Gledhill, which later resulted in his death. In applying the Connecticut statute*, which is similar to the Virginia statute, the court held that Gledhill was not a guest in his own car, and that

---

*"No person transported by the owner or operator of a motor vehicle as his guest without payment for such transportation shall have a cause of action for damages against such owner or operator for injury, death or loss, in case of an accident, unless such accident shall have been intentional on the part of such owner or operator, or caused by the heedlessness or his reckless disregard of the rights of others." (General Statutes of Connecticut, § 1628)

the operator of the car, Graham, could not plead the guest statute as a defense to the action.

In *Naphtali* v. *Lafazan*, 186 N. Y. S. 2d 1010, 8 A. D. 2d 22, Naphtali, owner of an automobile, and his wife taking an automobile trip, invited Mr. and Mrs. Lafazan to accompany them. An accident occurred in Ohio, while Lafazan was driving the automobile, with Naphtali seated beside him, and with their wives in the back seat. Mr. and Mrs. Naphtali sued Lafazan, the driver of the car for damages received by each of them. Lafazan pleaded the Ohio guest statute in defense, contending that both Mr. and Mrs. Naphtali were his guests and could not recover from him because he was not guilty of wilful or wanton misconduct. The court found that the defendant failed to use ordinary care but was not guilty of gross negligence. It then held, construing the Ohio statute, substantially the same as the Virginia statute, that Lafazan, the driver, could plead the statute against Mrs. Naphtali, because she was the guest of her husband, the host and owner of the car, and he, Lafazan, was the agent of her husband; but that he could not plead it against Mr. Naphtali, who was not a guest in his own car, and was, therefore, entitled to recover upon a showing of ordinary negligence.

In two California cases, *Ahlgren* v. *Ahlgren*, 313 P. 2d 88, 152 C. A. 2d 723 and *Ray* v. *Hanisch*, 306 P. 2d 30, 147 C. A. 2d 742, approving *Gledhill* v. *Connecticut Company, supra,* it was held that a car owner, while riding in his own car driven by another person, was not the guest of the driver, under the facts of the two cases.

In *Leonard* v. *Helms*, (C. A., 4th Cir.) 269 F. 2d 48, decided August 5, 1959, the federal court, in construing the Virginia statute, held that where the owner of the car, Helms, was riding in his car driven by Miss Leonard, and the car was wrecked and both occupants badly injured, the owner of the car did not lose his character of host and become the guest of his companion when he permitted her to drive the car for her own pleasure.

In *Mayer* v. *Puryear*, (C. A. 4th Cir.) 115 F. 2d 675, where the relationship of the parties was reversed, a young woman who was being transported gratuitously in an automobile by the owner, and driving at her own request, sued the owner because the latter negligently interfered with the operation of the car causing injuries to the driver. It was held that the defendant, owner of the car, was the host, and that the plaintiff, even though she was driving, was a guest so far as her host was concerned.

The evidence as to the status of Parker as a passenger in the car is short, simple and undisputed. Davis went to the home of Parker, with whom he had had a friendly acquaintance for 20 years, and asked Parker to transport him to a certain destination for a specific purpose. Parker refused the request, explaining that he could not carry him because he was forbidden to drive his car. Davis left, and, in about one-half hour later, returned. He then told Parker he was unable to get anyone to carry him to his desired destination, and admonished the latter to be a Good Samaritan. Parker said: "I can't drive," and Davis replied: "I can drive the car."

Parker said, although he had never ridden in a car with Davis, he knew that the latter could drive, and he permitted Davis to drive the car, upon condition that he, Parker, went along with him. It is significant that when Leroy Williams asked if he could go on the trip, Parker said: "All right, if you want to."

Davis did not invite Parker to ride with him; but he agreed to the arrangement in consideration of the favor granted him. There was no gratuitous understanding on the part of Davis, prompted by friendship, or family relation and interest, and without thought of bargaining, for the transportation. Parker did not relegate himself to the status of a guest in his own automobile. He and his car stood in the same relation to the driver of the car, with respect to the duty of Davis to drive with ordinary and reasonable care. Parker was, therefore, at all times, the host and Davis was actually the self-invited guest. Cf. *Miller* v. *Ellis*, 188 Va. 207, 213, 49 S. E. 2d 273.

Moreover, "With respect to 'payment' it is not necessary that the operator of the vehicle receive actual cash in return for the transportation supplied, since services or other benefits given by the occupant, if regarded by the parties as consideration inducing the offer of transportation, may be sufficient to entitle the occupant to the status of a paying passenger, as distinguished from a guest passenger." *Dickerson* v. *Miller*, 196 Va. 659, 662, 85 S. E. 2d 275; *Hill Hardware Corp.* v. *Hesson*, 198 Va. 425, 429, 94 S. E. 2d 256; *Smith* v. *Tatum*, 199 Va. 85, 89, 97 S. E. 2d 820; *Davis* v. *Williams*, 194 Va. 541, 545, 74 S. E. 2d 58. Cf. Annotation, 10 A. L. R., 2d 1352 *et seq.* and 25 A. L. R. 2d 1448 *et seq.*

As used in the statute, the term "guest without payment," imports that the person riding in a motor vehicle is the recipient of the hospitality of either the owner or operator of the vehicle. One who pays for his transportation is not a guest. If the consideration, in

whatever form, given to the operator of the car is sufficient to induce the transportation of another, such transportation is not afforded as a matter of ordinary courtesy or upon a gratuitous invitation. It would hardly be logical to hold that Parker, the owner of the car, was being transported by Davis, without payment for such transportation, when Parker, in furnishing the use of his car, contributed to Davis the cost of the transportation, an equivalent of the rental value of the car.

We find nothing in the facts which justify the holding that Parker, the owner of the car, lost his character of host and became the guest of Davis. We hold, under the evidence, that Parker was as a matter of law not a "guest without payment." There was no basis for the submission of the case to the jury on the theory that the plaintiff was required to establish that the defendant was guilty of gross negligence. Not occupying the status of a guest within the meaning of the statute, Parker was entitled to a recovery, if Davis was guilty of negligence which was the sole proximate cause of the accident.

The court erred in giving Instruction D-1, telling the jury that in order for plaintiff to recover, the evidence must show that the injuries complained of may have resulted from one of two causes for which Davis was responsible, and for the other of which he was not. There is no evidence in the record tending to prove that there was more than one cause of the accident.

The court also erred in giving Instruction D-5, which told the jury if they believed that "plaintiff permitted Davis to drive plaintiff's automobile while Davis was in such an intoxicated condition as to render him a dangerous driver and became a passenger or continued to be a passenger in the automobile after plaintiff knew or by the use of ordinary care should have known of such condition, plaintiff assumed the risk and was guilty of contributory negligence and if you believe such intoxicated condition on the part of Davis was the proximate cause of the injury to plaintiff, you must find a verdict for the defendant."

That instruction erroneously assumed that Davis was in an intoxicated condition. It is sufficient to say that there was no evidence to justify such assumption, or to show that plaintiff knew or should have known of such condition had it existed.

Nothing is better settled in Virginia than that an instruction should not be given when there is no evidence tending to prove the

facts upon which the instruction is based. 10 Michie Jur., Instructions, § 20, pages 213 *et seq.* and a multitude of cases cited.

For the reasons stated, the judgment of the trial court is reversed; the verdict of the jury set aside; and the case remanded for a new trial, in accordance with the views herein expressed.

*Reversed and remanded.*